UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - x
                  :
UNITED STATES OF AMERICA    :
                  :
    - v. -          :
                  :     14 Cr. 713 (KBF)
PETER CANALE,         :
                  :
        Defendant.   :
                  :
- - - - - - - - - - - - - - x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America


JORGE ALMONTE
Special Assistant United States Attorney
SARAH E. PAUL
Assistant United States Attorney
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                     :

UNITED STATES OF AMERICA    :
                     :

    - v. -              :
                     :      **14 Cr. 713 (KBF)**

PETER CANALE,          :
                     :

           Defendant.   :
                     :

- - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS

       The Government respectfully submits this Memorandum of Law in opposition to the pretrial motions filed by defendant Peter Canale (the "defendant" or "Peter Canale") to dismiss the Indictment as time barred pursuant to the statute of limitations and for a change of venue. See Docket Entries ("D.E.") 28-29.  For the reasons set forth below, these motions lack merit and should be denied.

### FACTUAL BACKGROUND

       On October 28, 2014, a grand jury sitting in the Southern District of New York returned an Indictment charging the defendant, Peter Canale, with one count of conspiracy to defraud the United States and to commit substantive tax offenses, in violation of 18 U.S.C. § 371.  See generally D.E. 2.  The Indictment alleges that, beginning in or about 1993 and continuing through in or about at least April 2011, the defendant conspired with others, known and unknown, to establish and maintain undeclared bank accounts in Switzerland, and to hide those

accounts, and the income generated in those accounts, from the Internal Revenue Service ("IRS") through various means, including the filing of false and fraudulent federal income tax returns. Id., ¶ 12.

Specifically, the Indictment alleges that the defendant, Peter Canale, together with his brother Michael Canale ("Michael Canale"), a now-deceased relative of both defendant Peter Canale and Michael Canale (the "Relative"), a Swiss adviser named Beda Singenberger ("Singenberger"), and another Swiss adviser named Hans Thomann ("Thomann"), worked together to open and maintain undeclared accounts at banks in Switzerland. Id., ¶¶ 1-4, 13(a). As alleged in the Indictment, the defendant and co-conspirator Michael Canale, working with co-conspirator Singenberger and others, used sham entities to conceal from the IRS and others their ownership of the undeclared accounts they established in Switzerland. Id., ¶ 13(b). The Indictment further alleges that, contrary to their legal obligations as citizens and residents of the United States, see id. ¶¶ 9-10, the defendant and Michael Canale each filed, and caused to be filed, false and fraudulent U.S. Individual Income Tax Returns, Forms 1040 ("Forms 1040"), which, among other things, failed to report their interest in their respective undeclared accounts and the income generated therefrom, and each further failed to file with the IRS a Report of Foreign Bank and Financial Accounts ("FBAR"), Form TD F 90-22.1, identifying their interest in, or signature authority over,

the undeclared accounts held in a foreign country with an aggregate
value of more than $10,000 at any time during a particular calendar
year.  Id., ¶¶ 11, 13(c) & (d).

        The Indictment alleges that the co-conspirator Relative, who
maintained an undeclared account in Switzerland beginning in or about
at least the early 1990s, introduced the defendant to co-conspirator
Thomann in Manhattan, New York, where they discussed the Relative's
undeclared account.  Id., ¶¶ 14, 16-17.  As alleged in the Indictment,
following the Relative's death, sometime in late 2000 or 2001, the
defendant and co-conspirator Michael Canale met with co-conspirators
Thomann and Singenberger at a hotel in Manhattan, New York, and
discussed continuing to maintain the undeclared assets the two brothers
had inherited from the Relative in an undeclared account for the benefit
of the defendant and Michael Canale.  Id., ¶¶ 17-18.  The Indictment
also alleges that co-conspirator Michael Canale met with
co-conspirator Singenberger in or about the early to mid-2000's in
Manhattan, New York, to discuss his undeclared account.  Id.,¶ 36(f).

        The Indictment, moreover, alleges that in or about July 2005,
the defendant met with co-conspirator Singenberger in Miami, Florida,
and entered into an agreement with Singenberger's advisory firm, Sinco
Treuhand AG ("Sinco"), to administer a foundation, called the Janara
Foundation, which was formed under the laws of Liechtenstein for the
benefit of the defendant, which later was used to open an undeclared

account at Wegelin & Co. ("Wegelin"), another Swiss bank.  Id., ¶¶ 7, 19-20.  As alleged in the Indictment, on or about December 31, 2009, the Janara Foundation at Wegelin held assets valued at approximately $788,920.  Id., ¶ 22.  Similarly, the Indictment alleges that co-conspirator Michael Canale, with the assistance of co-conspirator Singenberger, opened and maintained an undeclared account at Wegelin, held under the name of a separate foundation for the beneficial ownership of Michael Canale.  Id., ¶¶ 21, 23.

Additionally, the Indictment alleges that in or about May 2010, co-conspirator Singenberger, acting under the authority given to him by the defendant and co-conspirator Michael Canale, opened and caused to be opened, undeclared accounts at Swiss Bank A, yet another Swiss bank, for the benefit of the defendant and Michael Canale.  Id., ¶ 24.  The Indictment alleges that the undeclared account at Swiss Bank A for the defendant was opened in the name of the Janara Foundation, while the undeclared account at Swiss Bank A for Michael Canale was opened in the name of another foundation.  Id.  As alleged in the Indictment, on or about October 31, 2010, the Janara Foundation account at Swiss Bank A held assets valued at approximately $718,143.  Id., ¶ 26.

Finally, the Indictment alleges that for each of the calendar years from at least 2007 through 2010, the defendant and Michael Canale filed and caused to be filed with the IRS Forms 1040 in which they failed

to report as income dividends, interest, and other income received by
them in one or more bank, securities, and other financial accounts at
Wegelin and Swiss Bank A.  Id., ¶¶ 28, 29.  Likewise, as alleged in
the Indictment, the defendant and Michael Canale, for each of the
calendar years from at least 2007 through 2010, also failed to file
with the IRS an FBAR disclosing their authority over the accounts at
Wegelin and, later, Swiss Bank A.  Id., ¶¶ 30-31.

### ARGUMENT

### I.

### THE CHARGE IN THE INDICTMENT IS TIMELY

The defendant moves to dismiss Count One of the Indictment
on statute of limitations grounds.  As further explained below, this
motion lacks merit.

A.   The Statute of Limitations for Conspiracies
     Under Section 371 Runs From the Last Overt Act Charged

The defendant challenges as untimely the conspiracy count
in the Indictment on the basis that the only overt acts which the
Government can allegedly attribute to him personally in the Southern
District of New York are events which occurred in either late 2000 or
2001.  See D.E. 29, at 2 (citing D.E. 2, ¶¶ 36(c) & (d)).  However,
as will be discussed more fully below, the defendant mistakenly
conflates the law with regard to the statute of limitations for a
conspiracy charge, the generic statute of limitations applicable to

the filing of a false tax return, and overt acts which confer venue in a particular jurisdiction.  See D.E. 29, at 4-5.

Section 6531 of Title 26 controls the statute of limitations periods for most criminal tax offenses.  "For offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner," the period of limitations is six (6) years.  See 26 U.S.C. § 6531(1); see also United States v. Aracri, 968 F.2d 1512, 1517 (2d Cir. 1992).  Similarly, the six-year statute of limitations proscribed under Section 6531 also applies to "the offense of willfully attempting in any manner to evade or defeat any tax [in violation of 26 U.S.C. § 7201], as well as "the offense described in section[] 7206(1) [filing a false tax return]. See 26 U.S.C. §§ 6531(2) & (5).

The defendant readily admits that the statute of limitations for a tax conspiracy, which is the charged filed against him in the Indictment, is six years.  See D.E. 29, at 3.  However, the defendant erroneously describes the violation of 18 U.S.C. § 371 here as simply "a conspiracy to commit offenses against the United States pursuant to 26 U.S.C. §§ 7201 and 7206(1)".  See D.E. 29, at 2.  Adopting this limited view, the defendant argues that the only false return charge for which he could be held criminally responsible for in this District expired in 2007, six years after he filed a false tax return in either 2001 or 2002 in connection with the alleged meetings that took place

in the Southern District of New York.  <u>Id</u>., at 5.  Alternatively, the
defendant claims that even if the 2001 meeting in this District could
be attributable to him, the meeting itself could only be defined as
"preparatory" to any offenses which might have resulted, allegedly his
filing of false tax returns in the 2007 through 2010 calendar years.
<u>Id</u>.  Both arguments should be rejected.

The statutory allegation in the Indictment plainly states
that:

> 32.  From at least in or about 1993 through in or about at
> least 2011, in the Southern District of New York and
> elsewhere, PETER CANALE, the defendant, together with the
> Relative, Michael Canale, Beda Singenberger, Hans Thomann,
> and others known and unknown, willfully and knowingly did
> combine, conspire, confederate, and agree together and with
> each other, *to defraud the United States of America and an*
> *agency thereof, to wit, the IRS*, <u>and</u> to commit offenses
> against the United States, to wit, violations of Title 26,
> United States Code, Sections 7201 and 7206(1).

<u>See</u> D.E. 2, ¶ 32 (emphasis added).  As such, the criminal conspiracy
described in the Indictment charges both an agreement to defraud the
IRS and an agreement to commit the substantive offenses of tax evasion
and filing of false tax returns.  As alleged in the Indictment, an
object of this conspiracy was to defraud the United States for the
purpose of impeding, impairing, obstructing, and defeating the lawful
government functions of the IRS in the ascertainment, computation,
assessment, and collection of revenue, to wit, federal income taxes.
<u>Id</u>., ¶ 33.  This object was in addition to the defendant and his
co-conspirators' other objects to attempt to evade and defeat a

substantial part of the income taxes due and owing to the United States, in violation of 26 U.S.C. § 7201, and to make and subscribe to false tax returns, in violation of 26 U.S.C. § 7206(1). Id., ¶¶ 33-34. As further alleged in the Indictment, separate and apart from the obligation to file Forms 1040 that included all worldwide income, the defendant, having had a financial interest in, or signature authority over, a financial account in a foreign county with an aggregate value of more than $10,000 at any time during a particular calendar year, was required to file an FBAR. Id., ¶¶ 10, 11. The Indictment specifically alleges that the defendant and co-conspirator Michael Canale failed to file FBARs identifying their undeclared accounts during the conspiratorial period. Id., ¶ 13(d). This allegation is plainly part and parcel of the conspiracy to defraud the United States.

Further, while it is true that generally the statute of limitations for the filing of a false tax return starts on the day the return is filed, see United States v. Habig, 390 U.S. 222, 223 (1968), the defendant is not charged with the substantive offenses of tax evasion or the willful filing of a false tax return. Instead, he is charged with conspiring to defraud the United States and conspiring to commit substantive offenses against the United States. See United States v. Bilzerian, 926 F.2d 1285, 1301-02 (2d Cir. 1991)(noting that the United States may simultaneously prosecute conduct alleging violations of both the defraud and offense clauses of the conspiracy

statute).   The statute of limitations in a conspiracy begins to run
from the date of the last overt act proved.   Grunewald v. United
States, 353 U.S. 391, 397 (1957).   The government is not required to
prove, however, that each member of a conspiracy committed an overt
act within the statute of limitations.   Hyde v. United States, 225 U.S.
347, 369-70 (1912); see also United States v. Read, 658 F.2d 1225, 1234
(7th Cir. 1981) (interpreting the Hyde decision).   Once the government
shows that a member joined the conspiracy, his continued participation
in the conspiracy is presumed until the object of the conspiracy has
been achieved.   See, e.g., United States v. Rucker, 586 F.2d 899, 906
(2d Cir. 1978) ("Once a conspiracy is shown to exist, which in its
nature is not ended merely by lapse in time, it continues to exist until
consummated, abandoned or otherwise terminated by some affirmative
act.   Every act in furtherance of the conspiracy is regarded in law
as a renewal or continuance of the unlawful agreement, and the
conspiracy continues so long as overt acts in furtherance of its
purpose are done."); United States v. Schorovsky, 202 F.3d 727, 729
(5th Cir. 2000) ("A defendant is presumed to continue involvement in
a conspiracy unless she makes a 'substantial affirmative showing of
withdrawal, abandonment, or defeat of the conspiratorial purpose.'")
(internal citations omitted); United States v. Barsanti, 943 F. 2d 428,
437 (4th Cir. 1991) ("[C]onspiracy is an ongoing crime, and if a
conspiracy is established, it is presumed to continue until its

termination is affirmatively shown."); <u>United States v. Finestone</u>,816
F.2d 583, 589 (11th Cir. 1987) (same).

For a conspiracy count to have been properly charged within
a limitations period, "(1) the conspiracy must still have been ongoing
within the [six] year period preceding the indictment, and (2) at least
one overt act in furtherance of the conspiratorial agreement [must have
been] performed within that period." <u>United States v. Ben Zvi</u>, 242
F.3d 89, 97 (2d Cir. 2001), <u>quoting</u> <u>Grunewald</u>, 353 U.S. at 396-97.
"The crucial question in determining whether the statute of
limitations has run is the scope of the conspiratorial agreement, for
it is that which determines both the duration of the conspiracy, and
whether the act relied on as an overt act may properly be regarded as
in furtherance of the conspiracy." <u>United States v. Salmonese</u>, 352
F.3d 608, 614 (2d Cir. 2003), <u>quoting</u> <u>Grunewald</u>, 353 U.S. at 397.

The Indictment here was filed on October 28, 2014. <u>See</u>
<u>generally</u> D.E. 2. At trial, the jury will be instructed that in order
to find the defendant, Peter Canale, guilty they would have to find
beyond a reasonable doubt that the charged conspiracy existed sometime
after October 28, 2008. At least one allegation in the Indictment
unequivocally states that "in or about March 2010, PETER CANALE, the
defendant, filed, and caused to be filed, tax returns for 2009 that
falsely and fraudulent claimed that CANALE did not maintain an interest
in or signature or other authority over a financial account in a foreign

country during 2009." Id., ¶ 36(g).  There is no dispute that this alleged overt act, if proven beyond a reasonable doubt, took place within 6 years of the filing of the Indictment.  The Government anticipates presenting additional evidence of overt acts performed in furtherance of the charged criminal agreement between the defendant and others to defraud the United States and to commit substantive offenses against the United States, which continued through at least April 2011.  See United States v. Frank, 156 F.3d 332, 339 (2d Cir. 1998) ("the statute of limitations may be satisfied by proof an overt act not explicitly listed in the indictment, so long as a defendant has had fair and adequate notice of the charge for which he is being tried, and he is not unduly prejudiced by the asserted variance in the proof."); Salmonese, 352 F.3d at 619 ("[A]s long as defendant is given notice of the core of criminality to be proven at trial, this court has afforded the prosecution significant flexibility to prove the conspiracy's operation through both unalleged and alleged overt acts.") (internal quotation marks omitted).

Furthermore, the mere fact that a single count conspiracy charges several acts does not render it duplicitous.  See Aracri, 968 F.2d at 1518-19.  "To the contrary, [the Second Circuit] has long held that 'acts that could be charged as separate counts of an indictment may instead by charged in a single count if those acts could be characterized as part of a single continuing scheme.'"  United States

v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006) (quoting United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989)).  Moreover, the rule against duplicity does not prohibit the government from alleging two or more means of committing the same crime in a single count.  United States v. Morgan, 618 F.2d 892, 899 & n.7 (2d Cir. 1980) (allegation in a single count of commission of a crime by several means is not duplicitous).  Moreover, even if an indictment is duplicitous, which this Indictment is not, and even if that duplicity presents some risk of prejudice to the defendant, which this Indictment does not, that risk can often be avoided through jury instructions making clear to the jurors that they must unanimously agree on the particular conduct underlying the conviction.  See United States v. Nicolo, 523 F. Supp. 2d 303, 314, (S.D.N.Y. 2007) (collecting cases).

In essence, the defendant asks this Court to dismiss the conspiracy count as untimely on the grounds that the Government cannot prove overt acts personally involving him which occurred both in this District and within the six-year statute of limitations.  This argument, however, conflates the rules governing statute of limitations and the rules governing venue.

The Second Circuit has squarely held that overt acts establishing venue need not have been committed within the statute of limitations.  See United States v. Tannenbaum, 934 F.2d 8 (2d Cir. 1991).  In Tannenbaum, the defendant challenged his conviction under

13

18 U.S.C. § 371 on the ground that two of the overt acts alleged to have occurred in the Eastern District of New York, the district of prosecution, happened outside of the statute of limitations period, and therefore venue was lacking.  The <u>Tannenbaum</u> court took as established law that in order to sustain a conviction under § 371, "the government need not prove that all of the overt acts charged were committed within the [] limitations period." <u>Id</u>., 934 F.2d at 13 (<u>citing</u> <u>United States v. Scop</u>, 846 F.2d 135, 138-39 (2d Cir.), <u>overruled in part on other grounds</u>, 856 F.2d 5, (2d Cir. 1988)).  "Nor is the government burdened with proving that all of the overt acts occurred within the district." <u>Tannenbaum</u>, 934 F.2d at 13 (<u>citing</u> 18 U.S.C. § 3237(a); <u>United States v. Ramirez-Amaya</u>, 812 F.2d 813, 816 (2d Cir. 1987)).  Most importantly here, the <u>Tannenbaum</u> court noted: "[w]e are unaware of any law, however, that requires overt acts serving as a basis for venue to be committed within the statute of limitations."  As the <u>Tannenbaum</u> court explained:

> "[r]ules governing venue and limitations serve district purposes.  Statutes of limitation serve 'to *limit exposure* to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanction.  Such a limitation is designed to protect individuals from having to defend themselves against charges when the basis facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.'  Rules of venue, which are no less important, serve as a 'safeguard against the injustice and hardship involved when the accused [is] prosecuted in a place remote from his home and acquaintances.'  Although the government must prove that each *crime* has been timely

> prosecuted in the proper district, we discern no valid reason to burden the government with proving that the *overt act* establishing proper venue also must have been committed within the statute of limitations.

Tannenbaum, 934 F.2d at 13 (emphasis in original; internal citations omitted).  Indeed, as the Second Circuit noted, "imposition of a limitations requirement [for the overt acts establishing just venue] would bifurcate a conspiracy into two sets of events -- those within the limitations period and those without – and thereby conflict with the fundamental nature of a 'continuing crime.'"  Id. (citations omitted).

Accordingly, the correct analysis of the statute of limitations must focus on whether there are any overt acts committed by the defendant or any other co-conspirator within the six-year period prior to October 28, 2014 done in furtherance of the charged conspiracy, and not whether those acts also occurred within this District and were solely done by the defendant.  The allegations in the Indictment plainly satisfy this standard.

## II.

## VENUE IS PROPER IN
## THE SOUTHERN DISTRICT OF NEW YORK

The defendant has also simultaneously moved to transfer venue to the Western District of Kentucky.  As shown below, the conspiracy charged in the Indictment was properly brought in the

Southern District of New York because overt acts in furtherance of the conspiracy took place in this District, and the case should remain here.

      A.    The Venue Motion Should
              <u>Be Denied as Premature</u>

      As an initial matter, this motion should be denied as premature.  The Indictment properly alleges venue "in the Southern District of New York and elsewhere . . . ."  <u>See</u> D.E. 2, ¶ 32.  That allegation is sufficient "to sustain [the conspiracy count] against . . . pretrial attack on venue."  <u>United States v. Mahaffy</u>, No. S1 05 Crim. 0999 (LAK), 2006 U.S. Dist. LEXIS 53577, at **18-19, 2006 WL 2224518, at *7 (E.D.N.Y. Aug. 2, 2006), <u>quoting</u> <u>United States v. Bellomo</u>, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003); <u>United States v. Stein</u>, 429 F.Supp.2d 633, 643 (S.D.N.Y. 2006)("[A]s long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied.").  If proof at trial fails to support venue in this district, the defendant may move for a judgment of acquittal at the close of the Government's case in chief.  <u>Bellomo</u>, 263 F. Supp. 2d at 579; <u>United States v. Nicolo</u>, 523 F. Supp. 2d at 320.

      B.    Venue is Proper Here Because
              Overt Acts In Furtherance of the
              <u>Conspiracy Occurred Here</u>

      For a conspiracy charge, venue lies "in any district in which such offense was begun, continued or completed."  18 U.S.C. § 3237(a).  In other words, venue is proper in any district in which an overt act

in furtherance of the conspiracy was committed by any conspirator.  See Unites States v. Naranjo, 14 F.3d 145, 147 (2d Cir. 1994); see also United States v. Svoboda, 347 F.3d 471, 482-83 (2d Cir. 2003) ("Venue is proper in a district where (1) the defendant intentionally or knowingly caused an act in furtherance of the charged offense to occur in the district of venue, or (2) it is foreseeable that such an act would occur in the district of venue.").  This can include evidence that a conspirator traveled into the district, see United States v. Nathan, 476 F.2d 456, 461-62 (2d Cir. 1973), or directed communications into the district, see United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007).

As noted above, the Indictment here alleges that prior to his death in or about July 2000, the co-conspirator Relative introduced the defendant to co-conspirator Thomann in Manhattan, New York, where they discussed the Relative's undeclared account.  See D.E. 2, ¶¶ 16,17.  The Indictment further alleges that following the Relative's death, sometime in late 2000 or 2001, the defendant and co-conspirator Michael Canale met with co-conspirators Thomann and Singenberger at a hotel in Manhattan, New York, and discussed the continued maintenance of the undeclared assets the two brothers had inherited from the Relative in an undeclared account for the benefit of the brothers. Id., ¶¶ 17-18.  Moreover, the Indictment alleges that co-conspirator Michael Canale met with co-conspirator Singenberger in or about the

early to mid-2000's in Manhattan, New York, to discuss his undeclared account.  Id., ¶ 36(f).  As such, the Indictment alleges substantial contacts by the co-conspirators with the Southern District of New York, thereby making venue in this District appropriate for the charged conduct.

Alternatively, defendant Peter Canale argues that "even if the 2001 meeting in the Southern District of New York could be attributable to [him], the meeting itself could only be defined as 'preparatory' to any offenses which might have resulted, that is, the alleged false tax returns." See D.E. 29, at 4; see also D.E. 28, at 3-7 (arguing that the "conduct constituting the offense in Mr. Canale's case, that is, the filing of the tax returns, took place in Jamestown, Kentucky.").  Again, the defendant misunderstands and misinterprets the charged conspiracy here.  As discussed above, the Indictment charges a conspiracy with the object of defrauding the IRS, as well as with the objects of committing substantive offenses against the United States, which are continuing offenses.  See D.E. 2, ¶ 32; see also 18 U.S.C. § 3237(a).  This is not the case of a single, non-continuing act, where the crime is "committed" in the district where the act is performed." United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005), quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1188 (2d Cir. 1989).  Instead, it is one "where the acts constituting the crime and the nature of the crime charged implicate

more than one location," and "venue is properly laid in any of the districts where an essential conduct element of the crime took place." Ramirez, 420 F.3d at 139, quoting United States v. Rodriguez-Moreno, 526 U.S. 275, 281 (1999); see also United States v. Coplan, 703 F.3d 46, 77-78 (2d Cir. 2012) (finding that a false statement to the IRS was a continuing offense for venue purposes). The conduct alleged in the Indictment -- multiple meetings by various co-conspirators over a period of years, in which they discussed the establishment and continued maintenance of the undeclared accounts for the benefit of the Canales-- were not "preparatory," but instead constituted essential elements of the crime charged, that is, (1) the existence of an agreement by two or more persons to commit an offense against the United States or defraud the United States, (2) the defendant's knowing and voluntary participation in the conspiracy, and (3) the commission of an overt act in furtherance of the conspiracy. See United States v. Falcone, 311 U.S. 205, 2010 (1940); see also Svoboda, 347 F.3d at 476, 483 (holding that "in a conspiracy prosecution, venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators."); Rommy, 506 F.3d at 120 (2d Cir. 2007) (finding telephone calls between co-conspirators can constitute overt acts in furtherance of a conspiracy); United States v. Ramirez-Amaya, 812 F.2d 813, 816 (2d Cir. 1987) ("Venue may properly be laid in the district in which the

conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators").

### III.

### THIS CASE SHOULD NOT BE TRANSFERRED
### TO ANOTHER DISTRICT

In moving to transfer the trial to the Western District of Kentucky, the defendant effectively suggests that Government counsel, agents, as well as support staff move themselves and their documents, exhibits and equipment to Bowling Green, Kentucky[1] and that the resulting bill be sent to the taxpayers, all so that he can avoid a week-long trip to Manhattan.  The defendant has not met his burden of showing that he is entitled to such a transfer.  A transfer would result in a waste of resources and would most certainly cause an unnecessary delay in the trial.  This motion should, accordingly, be denied.

Rule 21(b) of the Federal Rules of Criminal Procedure states that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).

---

[1]   The defendant never specifies which of the four vicinages in the Western District of Kentucky he proposes transferring this case.  Given that he resides in Jamestown, Kentucky, see D.E. 29, at 4 n.2, and asserts that his false tax filings all occurred from his residence, see D.E. 28, at 7, the closest U.S. Courthouse appears to be in Bowling Green, Kentucky.  See L.Cr.R. 18.2(a)("Criminal actions will be assigned to the jury division in which the crime is alleged to have occurred.").

"As a general rule a criminal prosecution should be retained in the original district." United States v. Borker, No. 10 Cr. 1266 (RJS), 2011 U.S. Dist. LEXIS 46063, at *3, 2011 WL 1630344, at *1 (S.D.N.Y. Apr. 28, 2011); see also United States v. Rubin/Chambers, No. 09 Cr. 1058 (VM), 2011 U.S. Dist. LEXIS 1539, at *4, 2011 WL 102695, at *1 (S.D.N.Y. Jan. 3, 2011); United States v. Parrilla, No. 13 Cr. 360 (AJN), 2014 U.S. Dist. LEXIS 72650, at *3, 2014 WL 2200403 at *1 (S.D.N.Y. May 22, 2014); United States v. Riley, 296 F.R.D. 272, 275 (S.D.N.Y. 2014); United States v. Spy Factory, Inc., 951 F. Supp. 450, 455 (S.D.N.Y. 1997). The defendant bears the burden of proving that a trial in the district from which transfer is sought either unduly burdens the defense or creates undue prejudice against the defendant. Riley, 296 F.R.D. at 275; United States v. Valdes, No. 05-CR-156 (KMK), 2006 U.S. Dist. LEXIS 12432, at *10, 2006 WL 738403, at *3 (S.D.N.Y. Mar. 21, 2006); Spy Factory, 951 F. Supp. at 464.

"[T]o warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district . . . ." United States v. United States Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1982). Mere inconvenience will not require a transfer, as some inconvenience is inherent in any trial. See United States v. Larsen, No. 13 Cr. 688 (JMF), 2014 U.S. Dist. LEXIS 5707, at *11, 2014 WL 177411 at *3 (S.D.N.Y. 2014); United States v.

<u>Wilson</u>, No. 01 Cr. 53 (DLC), 2001 U.S. Dist. LEXIS 9572, at *9, 2001
WL 798018 at *3 (S.D.N.Y. July 13, 2001).  As such, the defendant bears
the burden of overcoming this presumption against transfer and must
provide "concrete demonstrations" of why a transfer is in the interest
of justice. <u>See</u> <u>Spy Factory, Inc.</u>, 951 F. Supp. at 456.  Ruling on a
transfer of venue in the interest of justice is entirely "vested in
the sound discretion of the district court."  <u>United States v.
Maldonado-Rivera</u>, 922 F.2d 934, 966 (2d Cir. 1990).

 "In this Circuit, venue must . . . also satisfy the
'substantial contacts' test enunciated in <u>United States v. Reed</u>, 773
F.2d 477, 481 (2d Cir. 1985), which requires consideration of four
factors:  "(1) the site of the crime; (2) its elements and nature; (3)
the place where the effect of the criminal conduct occurs; and (4) the
suitability of the venue chosen for accurate fact-finding."  <u>See</u> <u>United
States v. Tomasetta</u>, No. 10 Cr. 1205 (PAC), 2012 U.S. Dist. LEXIS 79419,
at *20 (S.D.N.Y. June 6, 2102), <u>quoting</u> <u>United States v. Royer</u>, 549
F.3d 886, 895 (2d Cir. 2008); <u>see also</u> <u>United States v. Saavedra</u>, 223
F.3d 85, 92-93 (2d Cir. 2000).  This test is not a formal constitutional
test, but rather is employed primarily to determine whether a given
venue is unfair or prejudicial to the defendant.  <u>Saavedra</u>, 223 F.3d
at 92.

 Here, the defendant has argued as part of his motion for a
Rule 21(b) transfer that prosecution in this District will result in

22

a hardship to him.  He has made no argument that prosecution here will otherwise prejudice him or undermine the fairness of his trial.  See United States v. Rowe, 414 F.3d 271, 280 (2d Cir. 2005) (finding defendant did not provide any evidence showing that New York juries disfavor the conduct at issue any more than Kentucky juries).  As such, the substantial contacts analysis weighs in favor of venue in this judicial district, where essential elements of the crime took place, and the contacts within this District undoubtedly furthered the objectives of the conspiracy.  See United States v. Tzolov, 642 F.3d 314, 320-21 (2d Cir. 2011) (finding substantial contacts with venue where defendant and co-defendant's travel through Eastern District of New York was in furtherance of the conspiracy as it facilitated face-to-face meetings, which was a regular part of their fraudulent scheme); Tomasetta, 2012 U.S. Dist. LEXIS 79419, at **20-23 (finding that defendants' dinner meetings in the Southern District of New York involved discussions in furtherance of the object or purpose of the conspiracy which were sufficient to establish venue).

Moreover, the Supreme Court has set forth ten factors this Court must consider in evaluating the defendant's Rule 21(b) motion.  See Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 244-45 (1964).  A review of these factors, in the order they are identified in Platt, shows that the defendant has not met his burden of showing that he is entitled to a change of venue.  United States v. Keuylian,

602 F.2d 1033, 1038 (2d Cir. 1979) (adopting the <u>Platt</u> factors as standard in deciding a motion for transfer); <u>Maldonado-Rivera</u>, 922 F.2d at 966 (noting that "[n]o one of these considerations is dispositive").

### A. Location of the Defendant

There is no dispute that the defendant, who previously lived, among other places, in Manhattan, New York, now currently resides in Jamestown, Kentucky. <u>See</u> D.E. 2, ¶ 1; <u>see also</u> D.E. 28, at 5.

While courts in this Circuit have recognized a policy of trying defendants where they reside where possible, <u>Spy Factory</u>, 951 F. Supp. at 456, the Supreme Court made clear in <u>Platt</u> that a defendant's residence "has no independent significance." <u>Platt</u>, 376 U.S. at 245. This policy arises from a concern that a trial "far away from home" can be a hardship for a defendant. <u>United States v. Aronoff</u>, 463 F. Supp. 454, 457 (S.D.N.Y. 1978). There is "constitutional significance of an individual citizen's interest in being tried in the place of his residence." <u>United States v. Ohran</u>, No. 99 Cr. 142 (JSM), 2000 U.S. Dist. LEXIS 6480, at *7, 2000 WF 620217, at *3 (S.D.N.Y. May 12, 2000) (<u>citing</u> <u>United States v. Johnson</u>, 323 U.S. 273, 275-76 (1944)). However, residence "is [neither] dispositive [n]or has independent significance in determining whether transfer is warranted." <u>Riley</u>, 296 F.R.D. at 276. It is well established that "'inconvenience of the defendant or his business is not, by itself, sufficient basis for a transfer,'" <u>See</u> <u>United States v. Conner</u>, No. 00 Cr. 731 (GBD), 2001

U.S. Dist. LEXIS 1110, at *8, 2000 WF 620217, at *3 (S.D.N.Y. May 12, 2000) (quoting United States v. Culoso, 461 F. Supp. 128, 136 (S.D.N.Y. 1978); see also United States v. Antia, No. 97 CR 733, 1999 U.S. Dist. LEXIS 5702, at *2 (E.D.N.Y. Mar. 22, 1999) (citing United States v. Wheaton, 463 F. Supp. 1073, 1078 (S.D.N.Y. 1979), aff'd, 614 F.2d 1293 (2d Cir. 1980), and that a defendant's residence should not be given "dispositive weight." Spy Factory, 951 F. Supp. at 456.  In fact, the law is clear that "[a] Court should not give any one factor preeminent weight. . . ." Id. (citing Maldonado-Rivera, 922 F.2d at 966); see also United States v. Quinn, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing treatises in noting trend towards denying motions to transfer under Rule 21(b) considering "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades.").

         While the defendant's desire to have the trial held in Kentucky is understandable, the duration of the trial in this case – estimated at approximately one week by the parties – is not nearly as long as other cases where motions to transfer on the basis of the defendant's convenience have been denied.  See, e.g., United States v. Stein, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006) (denying motion to transfer to despite where trial was anticipated to last many months).

         As such, while the defendant's residence in Kentucky would be a factor favoring transfer, it must be balanced against other

countervailing considerations, which weigh strongly against transfer here. Spy Factory, 951 F. Supp. at 456

### B.  Location of Witnesses

While the defendant represents to this Court that "a substantial majority of the potential trial witnesses for the defense live in Kentucky," see D.E. 28, at 9, there is no suggestion that any trial witnesses will be unable to appear to testify in New York.  United States v. Wilson, 2001 U.S. Dist. LEXIS 9572, at *6.; United States v. Estrada, 880 F. Supp. 2d 478, 482-83 (S.D.N.Y. 2012) ("finding that the location of witnesses did not favor transfer of venue where defendant did not identify "any specific person [who] will not be able to come" to New York to testify.").  Here, the defendant has identified by name only two individuals whom he has "preliminarily consulted" as potential defense expert witnesses.  See D.E. 28, at 9-10, n.5 (emphasis added).  Because he has the burden of proof on this motion, "a defendant is required to give 'specific examples of witnesses' testimony and their inability to testify because of the location of the trial.'"  United States v. Brooks, No. 08 Cr. 35 (PKL), 2008 U.S. Dist. LEXIS 58101, at **5-6, 2008 WL 2944626 at *2 (S.D.N.Y. 2008), quoting Spy Factory, 951 F. Supp. at 456.  "[T]he court must rely on concrete demonstrations of the proposed testimony." Spy Factory, 951 F. Supp. at 456.  The naked allegation that witnesses will be inconvenienced by a trial in a distant forum will not suffice for a

transfer.  Id.; see also United States v. Juncal, No. 97 Cr. 1162 (JFK), 1998 U.S. Dist. LEXIS 12230, at *17 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case").  Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided Platt."  United States v. Ebbers, No. S4 02 Cr. 1144 (BSJ), 2004 U.S. Dist. LEXIS 20667, at *3 (S.D.N.Y. Oct. 20, 2004).

On the other hand, many, if not most, of the Government's witnesses are here in New York.  Although the Government has not determined all of its trial witnesses at this stage of the litigation, it anticipates they will include IRS agents based in New York who interviewed the defendant and his co-conspirator brother Michael Canale, who will testify about the investigation and their interviews with the co-conspirators.  The Government anticipates that records custodians for the various foreign financial institutions involved will also be called to testify regarding the financial records at issue.  These witnesses will likely be traveling from overseas and would most conveniently travel into the New York metropolitan area.

Additionally, co-conspirator Michael Canale, who resides in Florida and will necessarily be required to travel outside his home

jurisdiction to testify, has made no claim of inconvenience, and has experience traveling to New York for purposes of criminal proceedings in this district.[2]  See Estrada, 880 F. Supp. 2d at 483 (denying transfer of venue and observing that counterbalancing defendants' witnesses are the government's New York-based witnesses, including law enforcement agents).

The defendant has not, and likely cannot, meet his burden with respect to the location of witnesses.  Accordingly, this factor weighs against transfer.

### C.   Location of Events Likely to Be in Issue

The defendant also fails to demonstrate that the location of events in this case warrants transfer.  The defendant incorrectly characterizes that the "underlying conduct charged in the indictment is directly related to the filing of income tax returns from his residence in Jamestown, Kentucky to the Cincinnati, Ohio office of the IRS."  See D.E. 28, at 10.  This argument ignores, however, that a substantial portion of the events and transactions that form the basis for the conspiracy charge in this Indictment which occurred at various times in New York, Florida, as well as overseas.  Most significantly, as alleged in the Indictment, the defendant and co-conspirators Michael

---

2      Defendant Peter Canale has cited to the sentencing transcript of co-conspirator Michael Canale as raising questions whether venue was appropriate in this jurisdiction.  However, Michael Canale pled guilty to an FBAR violation, which is a substantive violation distinct from the conspiracy charged against the defendant in this case.

Canale, Singenberger, and Thomann met on several occasions in Manhattan to discuss and further their conspiratorial agreement.

Since events in the case took place in the Southern District of New York, the Southern District of Florida, the Western District of Kentucky, as well as internationally, no one forum could accommodate the entire case exclusively.  As a result, the Constitutional propriety of venue should satisfy this factor.  See United States v. Hays, Crim. No. 96-51-02, 1997 U.S. Dist. LEXIS 748, at *2, 1997 WL 34666 at *4 (E.D. Pa. Jan. 30, 1997)(proper venue satisfies factor when events took place in multiple districts); United States v. Bloom, 78 F.R.D. 591, 609 (E.D. Pa. 1977)(same); cf. United States v. Valdes, No. 05-CR-156 (KMK), 2006 U.S. Dist. LEXIS 12432, at **18-19, 2006 WL 738403 at *5 (S.D.N.Y. Mar. 21, 2006)(where criminal activity is national in scope and has ties to multiple sites, the location of events at issue favors neither side); Spy Factory, 951 F. Supp. at 457 (same).  Other cases hold the national or international scope of a crime to be a critical factor in denying a transfer of venue motion.  See, e.g., United States v. Ebbers, 2004 U.S. Dist. LEXIS 20667, at **3-4 (nationwide securities fraud); United States v. Wilson, 2001 U.S. Dist. LEXIS 9572, at **4-5 (nationwide accounting fraud); United States v. Guastella, 90 F. Supp. 2d 335, 339 (S.D.N.Y. 2001) (international investment scheme).

This factor, therefore, weighs against transfer.

D.   Location of Documents

The defendant again mistakenly claims "this case is based entirely on events that occurred in Kentucky," as the basis for arguing that the location of relevant documents strongly favors transfer.  See D.E. 28, at 10.  However, he fails to provide any information whatsoever about what documents and records are located in Kentucky.  In fact, the defendant has not produced any reciprocal discovery in accordance with Fed. R. Crim. P. 16(b).  Meanwhile, the documents produced in discovery by the Government were made available to defense counsel in New York in electronic format.  It is presumed that the defendant will have easy access to those documents in any district because of electronic discovery.  Further, there is no reason to believe that any significant documents or other records that the defendant has stored in Kentucky may not be easily copied and sent to New York.  "It is well settled that 'given the conveniences of modern transportation and communication,' the location of the documents is a minor concern, but it is one that favors New York." Estrada, 880 F. Supp. 2d at 484); see also Brooks, 2008 U.S. Dist. LEXIS 58101, at *7 ("Because '[t]he location of documents and records is not a major concern in these days of easy and rapid transportation,' this is a neutral factor.")(quoting United States v. Posner, 549 F. Supp. 475, 478 (S.D.N.Y. 1982)).

This is factor weighs against transfer, or at the very least is neutral.

E.  Disruption of Defendant's Business

The defendant has not offered any justification to transfer this case based on any alleged disruption to any particular business or profession he is (or may be) involved with.  See D.E. 28, at 11. Specifically, the defendant "has not supplied the Court with any facts indicating [how] his business[], job[], or career[] would be disrupted by trial in this district."  Brooks, 2008, U.S. Dist. LEXIS 58101, at **7-8, quoting Guastella, 90 F. Supp. 2d at 340(finding this factor unhelpful to defendants who fail to specify impact of trial on their businesses).

The defendant has failed to meet his burden here. Accordingly, this factor also weighs against transfer.

F.  Expense to the Parties

The defendant attempts to meet his burden of proof on this factor by suggesting that "it will cost substantially more to defend this case in New York rather than Kentucky."  See D.E. 28, at 11.  He makes this sweeping representation to the Court by stating that "instead of residing in their homes and attending court locally, [he and his unspecified witnesses] will have to travel to New York and obtain accommodations, meals and the like in a foreign jurisdiction."  Id. Nevertheless, the defendant fails to estimate or document his costs, or even allege an inability to pay them.  When considering this factor,

31

courts do not look to the overall expense of a trial to a defendant, as every criminal prosecution imposes some expense on all but indigent defendants.  See Riley, 296 F.R.D. at 277; Brooks, 2008 U.S. Dist. LEXIS 58101, at *8; Valdes, 2006 U.S. Dist. LEXIS 12432, at **23-24.  Instead, to meet his burden, the defendant must show that he has insufficient funds to provide for his defense if the case is not transferred.  Riley, 296 F.R.D. at 277; Valdes, 2006 U.S. Dist. LEXIS 12432, at *23; Spy Factory, 951 F. Supp. at 459.  This defendant cannot meet his burden because he has retained counsel in his defense, both in New York as well as in Kentucky, the latter of which have already been admitted pro hac vice to appear in this District on this case.

On the other hand, expenses are a significant factor for the Government.  Courts have recognized that "public funds are to be safeguarded."  United States v. Atwood, 538 F. Supp. 1206, 1209 (E.D. Pa. 1982); see United States v. Hays, 1997 U.S. Dist. LEXIS 748, at **12-13 (court required to consider expenses to all parties).  Courts in this District have considered expenses that the Government would incur as a result of a transfer in deciding Platt motions.  Riley, 296 F.R.D. at 277; Brooks, 2008 U.S. Dist. LEXIS 58101, at *8; Valdes, 2006 U.S. Dist. LEXIS 12432, at **24-25; Spy Factory, 951 F. Supp. at 459.  A trial in Bowling Green, Kentucky would require the Government to transport and house at least the two prosecutors, a paralegal, as well as several case agents who investigated this case in the New York area.

See Ebbers, 2004 U.S. Dist. LEXIS 20667, at *5 ("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff and others familiar with the case . . . to another jurisdiction."); United States v. Carey, 152 F. Supp. 2d 415, 422-24 (S.D.N.Y. 2001) (denying transfer motion where, if venue transferred to the District of Columbia, the effect is merely to shift the economic burden to the government.")

      This factor weighs heavily against transfer.

      G.  Location of Counsel

      As for location of counsel, the Supreme Court and several Courts of Appeals have found that courts should consider all counsel, including government counsel, when deciding Rule 21(b) motions. Platt, 376 U.S. at 771; Keuylian, 602 F.2d at 1038.  Two of the Government's counsel of record work in Manhattan, while another is a Special Assistant U.S. Attorney assigned to cases in this jurisdiction. Meanwhile, the defendant has retained New York counsel in addition to counsel based in Kentucky, as is his right.  Additionally, Kentucky counsel has indicated its willingness and availability to participate in proceedings in this District having made pro hac vice appearances in this case as well as making themselves available for the trial already scheduled by this Court.

      This factor weighs against transfer.

H.   Relative Accessibility of the Place of Trial

Manhattan is more accessible for Government counsel and
their staff, the case agents and the many, if not most, of the witnesses
that the Government will call in its direct case, as described in more
detail above.  For those who do not live in the area, New York City
enjoys excellent access to domestic and international flights, as well
as taxicab and train service within walking distance of the courthouse
and is at or near some of the busiest highways in the nation.  Manhattan
is within a reasonable driving distance of four commercial airports
and there are far more scheduled commercial flights to and from this
area than there are to and from Bowling Green, Kentucky.  Simply put,
Manhattan is more accessible than Bowling Green by either public or
private transportation.

This factor weighs against transfer.

I.   Docket Conditions

If judges in the Western District of Kentucky have a slightly
lower civil caseload than their counterparts in the Southern District
of New York, see D.E. 28, at 12, it appears that they conversely have
a slightly higher criminal caseload.  Id.  Add to this the fact that
this Court has already indicated it is available, and has scheduled
a trial date to begin on September 15, 2015, one which is convenient
for all of the parties involved.  See Stein, 429 F. Supp. 2d at 645
(noting the fact that the Court already scheduled trial in the case

34

"ensur[ed] that defendants will receive ample attention regardless of docket considerations."). Therefore, it is virtually certain that a transfer of this case would result in a delay of a trial in this action. See Estrada, 880 F. Supp. at 485.

Accordingly, this factor weighs against transfer.

J.   Special Considerations

Even if the docket conditions in the Southern District of New York and the Western District of Kentucky were the same, a transfer of this case would very likely result in a delay, "since the case would then have . . . to be placed at the end of some other district court's busy criminal docket in [Bowling Green]." Keuylian, 602 F.2d at 1038. Further, a transfer would impose a "double burden on the judiciary," as this Court has already devoted resources to the case and a new judge in Bowling Green would have to become familiar with it and try it. United States v. Wheaton, 463 F. Supp. 1073, 1079 (S.D.N.Y. 1979); see United States v. Zylstra, 713 F.2d 1332, 1336 (7th Cir. 1983)("Courts must be mindful of . . . the actual expense and waste of court time in our severely burdened and overtaxed federal judicial system" in reviewing a Rule 21(b) motion).

This factor weighs against transfer.

K. Conclusion

A court should not give any one factor preeminent weight or consider only the quantity of factors favoring one party over the other.

Instead, the court should "try to strike a balance and determine which factors are of greatest importance." <u>Maldonado-Rivera</u>, 922 F.2d at 966.  The balance here clearly favors a trial in Manhattan.  It is the jurisdiction where the matter was investigated and charged.  The trial in this case, which has already been scheduled, will be relatively short.  As a result, it will involve relatively minimal disruption to the defendant.  The Government prosecution team and many, if not most, of the Government's witnesses are in the local area or will travel to a major transportation hub close to the courthouse.  A transfer would result in significant expense to the Government and would most assuredly delay the trial.  The defendant would gain little benefit from a transfer, at the expense of the interests of this jurisdiction in seeing this prosecution through.  For these reasons, the Court should follow the general rule that cases should remain in the district in which they were indicted.  The defendant's motion to transfer venue should be denied.

## CONCLUSION

For all these foregoing reasons, the Government respectfully requests that the Court deny the defendant's motions.


Dated:  New York, New York
        May 29, 2015

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney


                         By:_____/s/_____
                         Jorge Almonte
                         Special Assistant United States Attorney
                         Sarah E. Paul
                         Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of May 2015, I caused a copy of the foregoing to be delivered via electronic filing to all parties registered via ECF, including:

Bobbi C. Sternheim, Esq.
John Robinson, Esq.
Law Office of Bobbi C. Sternheim
33 West 19th Street, 4th Floor
New York, NY 10010

Mark A. Wohlander, Esq.
Caitlin A. Wohlander, Esq.
Wohlander Law Office, PSC
P.O. Box 910483
Lexington, KY 40591

*Counsel for Defendant Peter Canale*

By:_____/s/_____
Jorge Almonte
Special Assistant United States Attorney