USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 17, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA                                                :
:
   - v. -                                                               :   14 Cr. 713 (KBF)
:
:   OPINION & ORDER
PETER CANALE,                                                           :
:
                       Defendant.              :
------------------------------------------------------------------------X

**KATHERINE B. FORREST**, United States District Judge:

      Before the Court is defendant's motion to dismiss the Indictment as time-barred or, in the alternative, to transfer this case to the Western District of Kentucky. (ECF No. 26.)[1] On June 12, 2015, the Court informed the parties on the record that it would deny defendant's motion and issue its decision in a separate order. This Opinion & Order sets forth the predicted rationale for the Court's decision.

I.    BACKGROUND[2]

      On October 28, 2014, a grand jury sitting in the Southern District of New York returned an Indictment charging Peter Canale ("defendant" or "Canale"), a resident of Kentucky, with one count of conspiracy to defraud the United States and to commit substantive tax offenses, in violation of 18 U.S.C. § 371. (Indictment ("Ind.") ¶¶ 1, 32, ECF No. 2.) The Indictment alleges that between about 1993 and

---

[1] Defendant filed this motion on May 8, 2015. The Government filed an opposition on May 29, 2015. Defendant did not file any reply in support of his motion.

[2] The Court sets forth only those facts which are relevant to resolving defendant's motion.

April 2011, Canale conspired with others to open and maintain undeclared bank accounts in Switzerland—and to hide those accounts, and the income generated therefrom, from the Internal Revenue Service ("IRS"). (Ind. ¶ 12.) Specifically, the Indictment alleges that Canale, his brother Michael Canale, and a now-deceased relative of the brothers (the "Relative") worked with Swiss advisers Beda Singenberger ("Singenberger") and Hans Thomann ("Thomann") to establish and maintain undeclared accounts at Swiss banks. (See Ind. ¶¶ 1-4, 6, 13(a).) The Indictment further alleges that the Canale brothers used sham entities to conceal their ownership of the undeclared Swiss accounts from the IRS, filed false and fraudulent federal income tax returns which failed to report their interest in, and income from, the accounts, and failed to file Reports of Foreign Bank and Financial Accounts ("FBARs") disclosing their authority over the accounts.[3] (Ind. ¶¶ 13(b)-(d), 28-31.)

The Indictment alleges that the following overt acts occurred in the Southern District of New York in furtherance of the conspiracy:

1. In July 2000, the Relative, who maintained an undeclared account in Switzerland, introduced defendant to Thomann in Manhattan, New York, where they discussed the Relative's undeclared account. (Ind. ¶¶ 14, 16.)

2. In late 2000 or 2001, after the Relative's death, defendant and Michael Canale met with Thomann and Singenberger at a Manhattan hotel and discussed continuing to maintain the undeclared assets the two brothers had

---

[3] FBARs must be filed by all U.S. taxpayers who have a financial interest in, or signature authority over, a foreign financial account with an aggregate value of over $10,000. (Ind. ¶ 10.)

inherited from the Relative in an undeclared account for the brothers' benefit. (Ind. ¶¶ 17-18.)

3. In the mid-2000s, Michael Canale met with Singenberger in Manhattan to discuss his undeclared account. (Id. ¶ 36(f).)

## II. LEGAL STANDARDS

### A. Statute of Limitations

"For offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not," the period of limitations is six years. See 26 U.S.C. § 6531(1); see also United States v. Aracri, 968 F.2d 1512, 1517 (2d Cir. 1992). For a § 371 conspiracy charge to be within the statute of limitations, (1) the conspiracy must still have been ongoing within the six-year period preceding the indictment, and (2) at least one overt act in furtherance of the conspiracy must have been performed within that period. United States v. Ben Zvi, 242 F.3d 89, 97 (2d Cir. 2001); see also United States v. Fletcher, 928 F.2d 495, 498 (2d Cir. 1991) ("The limitations period begins to run after the last overt act in furtherance of the main goals of the conspiracy." (citations omitted)); Grunewald v. United States, 353 U.S. 391, 396-97 (1957). The Government is not required to prove that each member of the conspiracy committed an overt act within the statute of limitations. See Hyde v. United States, 225 U.S. 347, 369-70 (1912); United States v. Read, 658 F.2d 1225, 1233-34 (7th Cir. 1981) (interpreting Hyde). "[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may

properly be regarded as in furtherance of the conspiracy." United States v. Salmonese, 352 F.3d 608, 614 (2d Cir. 2003) (quoting Grunewald, 353 U.S. at 397) (internal quotation marks omitted).

  B. Venue

A criminal defendant has the right to be tried in the "district wherein the crime shall have been committed." U.S. Const. amend. VI; see also id. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). The Second Circuit has held that:

> there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding.

United States v. Rowe, 414 F.3d 271, 278 (2d Cir. 2005) (quoting United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985)). "[T]he two chief ills that the constitutional venue provisions are meant to guard against" are "bias and inconvenience." Id. at 280-81.

"The crime of conspiracy, 18 U.S.C. § 371, is a continuing offense, the prosecution of which is proper 'in any district in which such offense was begun, continued or completed.'" United States v. Tannenbaum, 934 F.2d 8, 12 (2d Cir. 1991) (quoting 18 U.S.C. § 3237(a)). Thus, in a conspiracy prosecution, "venue may lie in any district in which the conspiracy was formed or in any district in which a

conspirator committed an overt act in furtherance of the criminal scheme." United States v. Rommy, 506 F.3d 108, 119 (2d Cir. 2007) (citations omitted).

The Government bears the burden of proving venue by a preponderance of the evidence. United States v. Bala, 236 F.3d 87, 95 (2d Cir. 2000). Prior to trial, however, "it suffices for the government to allege with specificity that the charged acts support venue in this district." United States v. Martino, No. S1 00 CR 389(RCC), 2000 WL 1843233, at *1 (S.D.N.Y. Dec. 14, 2000) (citation and internal quotation marks omitted).

C.  Rule 21(b)

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may transfer the proceeding . . . to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). "Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court." United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990) (citations omitted). In considering a motion to transfer, a district court should consider the so-called Platt factors: "(1) location of the defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) possible disruption of defendant's business if the case is not transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each district involved"; and (10) any other special elements that might affect the transfer. United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979) (citing Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240, 243-44 (1964)). "No

one of these considerations is dispositive, and '[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'" Maldonado-Rivera, 922 F.2d at 966 (quoting United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990)).

As a general rule, a criminal prosecution should be retained in the district in which it was filed, and the criminal defendant bears the burden of justifying a transfer.  United States v. Riley, 296 F.R.D. 272, 275 (S.D.N.Y. 2014).

III.  DISCUSSION

Defendant's principal argument as to timeliness is that the conspiracy count is time-barred because the Government has not alleged overt acts or offenses personally involving him which occurred both in this district and within the six-year statute of limitations.  This argument fails as a matter of law.  Defendant is not charged with the substantive offenses of tax evasion or the willful filing of false tax returns; he is charged with a conspiracy.  As a result, the Indictment is not time-barred so long as at least one overt act in furtherance of the main goals of the conspiracy occurred within the limitations period.  The law is clear that this overt act may be committed anywhere—and not necessarily in the district where the defendant is charged.  See Tannenbaum, 934 F.2d at 13 (holding that "[r]ules governing venue and limitations serve distinct purposes" and that overt acts establishing venue need not have been committed within the statute of limitations).

Here, the Indictment is clearly timely.  The charged conspiracy was allegedly ongoing until April 2011—well within the six-year period preceding the Indictment, which was filed on October 28, 2014—and the Indictment alleges at least one overt

act that was performed in furtherance of the conspiracy within the six-year limitations period. See Ben Zvi, 242 F.3d at 97. Specifically, the Indictment alleges that "[i]n or about March 2010, PETER CANALE, the defendant, filed, and caused to be filed, tax returns for 2009 that falsely and fraudulently claimed that CANALE did not maintain an interest in or signature or other authority over a financial account in a foreign country during 2009." (Ind. ¶ 36(g).) This alleged act was clearly within the scope of—and committed in furtherance of—the charged conspiracy to defraud the IRS, engage in tax evasion, and file false tax returns. (See Ind. ¶¶ 33-35.)[4] Accordingly, defendant's motion to dismiss the Indictment as time-barred is DENIED.

      Defendant's venue objection is also baseless: as set forth above, the Indictment alleges that a number of overt acts in furtherance of the charged conspiracy occurred in this district, including two meetings during which defendant and his co-conspirators discussed the maintenance of undeclared Swiss accounts for the benefit of the Canale brothers. That is sufficient to make venue proper in this district. See Rommy, 506 F.3d at 119. As set forth above, it is immaterial that the overt acts in this district occurred outside the statute of limitations.

---

[4] Defendant argues that "[e]ven if Mr. Canale filed fraudulent and false tax returns in 2007, 2008, 2009 and 2010, those violations would be a separate charge and would be unrelated to the charged conspiracy" because "[t]here is absolutely no evidence that Mr. Canale conspired with anyone to file his tax returns." (Memorandum of Law in Support of Dismissal of the Indictment as Time Barred Pursuant to the Statute of Limitations ("Def.'s SL Mem.") at 4, ECF No. 29.) This argument is meritless. Co-conspirators may—and very often do—play distinct roles in a conspiracy. See United States v. Ulbricht, 31 F. Supp. 3d 540, 561 (S.D.N.Y. 2014) ("The law of conspiracy recognizes that members of a conspiracy may serve different roles." (citing cases)). Co-conspirators need not reach agreement as to every overt act in furtherance of the conspiracy, or carry out all overt acts together.

In response, defendant argues that the overt acts alleged to have occurred in this district were merely preparatory and thus could not support venue here. According to defendant, "[o]ther than arranging the foreign account in the Southern District of New York, the government does not have a scintilla of evidence which would support a charge that Mr. Canale either attempted to evade or defeat a tax in violation 26 U.S.C. § 7201, or that Mr. Canale filed a fraudulent and false statement in violation of 26 U.S.C. § 7206." (Memorandum of Law in Support of Change of Venue ("Def.'s Venue Mem.") at 6, ECF No. 28.)  This argument once again misinterprets the crime charged in the Indictment.  Defendant is charged not with substantive tax offenses but with a conspiracy—and the objects of this conspiracy include not only the offenses under 26 U.S.C. §§ 7201 and 7206 but also the object of defrauding the IRS.[5]  The overt acts alleged to have occurred in this district—multiple meetings by various co-conspirators in which they discussed the establishment and continued maintenance of undeclared Swiss accounts for the benefit of the Canale brothers—were not "preparatory"; they were part and parcel of the charged conspiracy.[6]  Accordingly, venue is proper in this district.[7]

---

[5] The Government may simultaneously prosecute the same conduct under both the "defraud" and "offense" clauses of the conspiracy statute.  United States v. Bilzerian, 926 F.2d 1285, 1301-02 (2d Cir. 1991).

[6] United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989), on which defendant relies, is distinguishable.  In Beech-Nut, the Second Circuit held that venue was improper as to substantive counts alleging violations of the Federal Food, Drug, and Cosmetic Act ("FDCA").  The FDCA provision at issue prohibited introduction, or delivery for introduction, into interstate commerce of any adulterated or misbranded food.  The Government argued that prosecution in the Eastern District of New York was proper because the defendants' subordinates telephoned brokers to place orders for adulterated apple juice concentrate and mailed confirmations for these concentrate orders into the Eastern District.  The Second Circuit disagreed, holding that these acts were merely preparatory to the eventual introduction of the juice into commerce.  The Court specifically noted,

8

Finally, upon carefully considering the Platt factors, the Court finds that a transfer to the Western District of Kentucky pursuant to Rule 21(b) is unwarranted. This case was investigated and charged in this district. Manhattan is a more accessible location than Bowling Green, Kentucky—where this case would likely be tried if transferred. Moreover, defendant's local counsel in Kentucky has indicated that he intends to withdraw, such that counsel-of-record for both parties will be located in New York. The "expense" factor also weighs against transfer: While defendant has represented that it would cost substantially more to defend this case in New York than in Kentucky, he has not estimated his projected expenses and has not alleged that he has insufficient funds to cover them. See Riley, 296 F.R.D. at 277 (the expense factor is generally afforded serious weight only in cases involving indigent defendants). On the other hand, a trial in Kentucky would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents, in a remote location. See United States v. Carey, 152 F. Supp. 2d 415, 422 (S.D.N.Y. 2001) (denying a motion to transfer where, inter alia, the effect of a transfer would be "merely to shift the economic burden to the government").

---

however, that these acts were in furtherance of the charged conspiracy to sell misbranded and adulterated apple juice in interstate commerce.

Unlike in Beech-Nut, the charged offense here is a conspiracy rather than a substantive offense—and the alleged overt acts in this district go to the essential elements of this conspiracy, namely "(1) an agreement among two or more persons, the object of which is an offense against the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators." United States v. Svoboda, 347 F.3d 471, 476 (2d Cir. 2003) (citations omitted).

[7] In support of his motion as to venue, defendant cites to the sentencing transcript of his brother Michael Canale. However, Michael Canale pled guilty to an FBAR violation, which is a substantive violation distinct from the conspiracy charged here.

As to the location of trial witnesses, while defendant has represented that a substantial majority of the potential defense witnesses are in Kentucky, there is no suggestion that any of these witnesses will be unable to appear to testify in New York.  See United States v. Brooks, No. 08 CR. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("Generally, a defendant is required to give 'specific examples of witnesses' testimony and their inability to testify because of the location of the trial.'" (quoting United States v. Spy Factory, Inc., 951 F. Supp. 450, 456 (S.D.N.Y. 1997))); see also United States v. Estrada, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012).  Given that many of the Government's witnesses are in New York, the "location of the witnesses" factor does not support transfer.  As to the location of the relevant events, the conduct alleged in the Indictment occurred in several states, including New York, as well as internationally; this factor does not support a transfer of this action to Kentucky.  As to location of documents, the Court has no reason to believe that a significant number of relevant documents are located in Kentucky, much less that they are not available in easily accessible electronic format.  See Estrada, 880 F. Supp. 2d at 484 ("[G]iven the conveniences of modern transportation and communication, the location of the documents is a minor concern." (citation and internal quotation marks omitted)).  As to docket conditions, it appears that judges in the Western District of Kentucky have a lower civil caseload but a higher criminal caseload than judges in this district.  More important than caseload statistics, however, is the fact that this Court has already made itself available, familiarized itself with this case, and scheduled a trial date that is

10

convenient for both parties. See United States v. Stein, 429 F. Supp. 2d 633, 645 (S.D.N.Y. 2006) (denying defendants' motions to transfer where, inter alia, the court had already "scheduled trial . . . ensuring that defendants will receive ample attention regardless of docket conditions"). Transferring this case to Kentucky would very likely result in delays and duplication of judicial resources.

The sole factor in favor of transfer is defendant's location; there is no dispute that defendant resides in Kentucky. However, while courts in this Circuit have recognized a policy of trying defendants where they reside where possible, see Spy Factory, 951 F. Supp. at 456, the Supreme Court has made clear that a defendant's residence "has no independent significance" and should not be given dispositive weight. Platt, 376 U.S. at 245; see also Riley, 296 F.R.D. at 276. Here, any inconvenience to defendant is reduced by the fact that the trial is unlikely to last more than one week. Defendant also has not represented that any business or profession with which he may be involved would be disrupted if he were tried in this district.

In sum, the balance of the Platt factors favors a trial in this district.

IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the Indictment as time-barred and for a change of venue is DENIED. The Clerk of Court is directed to

terminate the motion at ECF No. 26.

      SO ORDERED.

Dated:      New York, New York
               June 17, 2015

                                            KATHERINE B. FORREST
                                            United States District Judge